IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROBERT ALAN GROSHONG,

    **Plaintiff,**

v.                                                 CASE NO. 24-3021-JWL

JOHN-MARK A. HENKE, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF"). The Court granted Plaintiff leave to proceed in forma pauperis. The Court finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate KDOC officials.

**I. Nature of the Matter before the Court**

Plaintiff alleges from February 9, 2023, to August 24, 2023, he dealt with numerous STGs (Security Threat Groups) "targeting" him at the Hutchinson Correctional Facility ("HCF"). (Doc. 1, at 2.) Plaintiff received numerous threats, both verbal and written, to have him "raped and skinned like a deer." *Id*. Plaintiff alleges that the notes and threats were turned over to the PREA Coordinators and EAI at HCF. Plaintiff alleges that because of these "validated threats," he was placed in Protective Custody or OSR (other security risk) in segregation at HCF, pending transfer for long term segregation at EDCF. *Id*.

Plaintiff was transferred to EDCF on August 24, 2023. *Id*. at 3. Plaintiff alleges that upon his arrival at EDCF, Plaintiff spoke with UTS Bucholz about these validated threats/PREA issues, and Plaintiff asked Bucholz to be careful about housing Plaintiff with people. *Id*. at 2, 3.

1

UTS Bucholz placed Plaintiff with inmate Guerro-Martinez, an ex-Sureno, who was being targeted for dropping out of his gang. Plaintiff claims that on August 29, 2023—in anticipation of the September 6, 2023 release date for Guerro-Martinez—Plaintiff submitted an electronic Form-9 to the new UTS, because UTS Bucholz had switched to a different cell house. The Form-9 stated that Plaintiff had a "Greenlight" or target on him, and because his cellmate was being released, he asked "to please not house him with STG members due to the validated threat against him." *Id*. at 2, 4. Plaintiff alleges that the UTS failed to answer this in a timely manner, and placed Plaintiff with an active member of the Surenos, who attacked Plaintiff on September 13, 2023, beating him in the head over 30 times causing Plaintiff to suffer a concussion. *Id*. at 2, 3.

Plaintiff alleges that on September 9, 2023 (prior to the attack), he was moved to a crisis cell on suicide watch by Behavioral Health Professional ("BHP") Martin. *Id*. at 4. On September 11, 2023, Plaintiff spoke with BHP Shara Wark, and was removed from crisis status. *Id*. Wark asked Plaintiff if he had another inmate in mind that he could bunk with successfully. *Id*. Plaintiff replied "no" and said that he did not know anyone in B1 he felt safe living with due to the greenlight/validated threat. *Id*. at 4–5. Wark asked Plaintiff if he was okay living with inmate Rodriguez, and Plaintiff stated that "this isn't your job to make security moves, but if UTS said it was okay, and if Rodriguez was okay with it, he would." *Id*. at 5. Plaintiff did not know that Rodriguez was a member of the Surenos 13 (one of the STGs targeting Plaintiff), until Rodriguez told him he was upon placement in the cell. *Id*. Upon placement in the cell and once restraints were removed, Rodriguez struck Plaintiff in the head over 30 times, until OC spray was deployed. *Id*.

Plaintiff alleges deliberate indifference and failure to protect him in violation of the Eighth Amendment. *Id*. at 3. Plaintiff names as defendants: John-Mark A. Henke, UTM at EDCF; and

Shara Wark, BHP at EDCF. Plaintiff seeks $150,000 in compensatory damages and $5,000 in punitive damages. *Id*. at 9.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988)(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

3

cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

**III. DISCUSSION**

Plaintiff alleges that Defendants failed to protect him by placing him in a cell with a known gang member when Plaintiff had a greenlight target on him. "[P]rison officials have a duty to 'provide humane conditions of confinement,' including 'tak[ing] reasonable measures to guarantee the safety of . . . inmates.'" *Hooks v. Atoki*, 983 F.3d 1193, 1205 (10th Cir. Dec. 29, 2020) (quoting *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018) (alteration and omission in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). This duty includes "a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (ellipsis and quotation marks omitted).

A claim of deliberate indifference requires a plaintiff to allege "that an official acted (or failed to act) in an objectively unreasonable manner and with subjective awareness of the risk." *Strain v. Regalado*, 977 F.3d 984, 987 (10th Cir. 2020) (noting that "the word deliberate makes a subjective component inherent in the claim"). Plaintiff must "establish that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 990 (citations and alteration omitted).

"[A]n official's intent matters not only as to what the official did (or failed to do), but also why the official did it." *Id*. at 1204 (citing *Strain*, 977 F.3d at 993). The official's response to the risk is also a consideration. *See id*. at 1205 (citing *Farmer*, 511 U.S. at 844 (explaining that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted")).

"The unfortunate reality is that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Turner v. Okla.*

*Cty. Bd. of Cty. Comm'rs*, 804 F. App'x 921, 926 (10th Cir. 2020) (unpublished) (citing *Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) (per curiam) (internal quotation marks omitted); *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (same)). "[S]ubjective awareness of only *some* risk of harm to a prisoner is insufficient for a deliberate-indifference claim." *Id*. (citing *Marbury*, 936 F.3d at 1238). Rather, "officials must possess enough details about a threat to enable them to conclude that it presents a strong likelihood of injury, not a mere possibility." *Id*. (citing *Marbury*, 936 at 1236 (internal quotation marks omitted)).

The Court finds that the proper processing of Plaintiff's Eighth Amendment claim cannot be achieved without additional information from appropriate KDOC officials. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate KDOC officials to prepare and file a *Martinez* Report. Once the Report has been received, the Court can properly screen Plaintiff's claim under 28 U.S.C. § 1915A.

**IT IS THEREFORE ORDERED BY THE COURT** that:

(1) The Court will enter a separate e-service order directing the Clerk of Court to serve Defendants Henke and Wark.

(2) The Kansas Department of Corrections ("KDOC") shall submit the *Martinez* Report within **sixty (60) days** following the electronic filing of the Waiver of Service Executed. Upon the filing of that Report, the Court will screen Plaintiff's Complaint. If the Complaint survives screening, the Court will enter a separate order setting an answer deadline. Therefore, any answer deadline provided in the docket entry for the waiver of service is not controlling.

(3) KDOC officials are directed to undertake a review of the subject matter of the

6

Complaint:

 a. To ascertain the facts and circumstances;

 b. To consider whether any action can and should be taken by the institution to resolve the subject matter of the Complaint; and

 c. To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Complaint and should be considered together.

(4) Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff. If the KDOC officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s). The KDOC officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(5) Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report. Any recordings related to Plaintiff's claims shall also be included.

(6) Authorization is granted to the KDOC officials to interview all witnesses having knowledge of the facts, including Plaintiff.

(7) No motion addressed to the Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(8) Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the Complaint. This action is exempted

from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter the KDOC as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein. Upon the filing of that report, the KDOC may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, Defendants, counsel for the KDOC, and to the Attorney General for the State of Kansas.

**IT IS SO ORDERED**.

**Dated February 12, 2024, in Kansas City, Kansas.**

                                                   **S/ John W. Lungstrum**
                                                   **JOHN W. LUNGSTRUM**
                                                   **UNITED STATES DISTRICT JUDGE**