IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**ROBERT ALAN GROSHONG,**

    **Plaintiff,**

    v.                                                                       CASE NO. 24-3021-JWL

**JOHN-MARK A. HENKE, et al.,**

    **Defendants.**

**MEMORANDUM AND ORDER**

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF"). The Court granted Plaintiff leave to proceed in forma pauperis. On February 12, 2024, the Court entered a Memorandum and Order (Doc. 4) ("M&O") finding that the proper processing of Plaintiff's Eighth Amendment claim could not be achieved without additional information, and directing Kansas Department of Corrections ("KDOC") officials to submit a *Martinez* Report. The M&O provides that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A." (Doc. 4, at 6.) The *Martinez* Report (Doc. 18) (the "Report") has now been filed. The Court's screening standards are set forth in the Court's M&O.

**I. Nature of the Matter before the Court**

Plaintiff alleges from February 9, 2023, to August 24, 2023, he dealt with numerous STGs (Security Threat Groups) "targeting" him at the Hutchinson Correctional Facility ("HCF"). (Doc. 1, at 2.) Plaintiff received numerous threats, both verbal and written, to have him "raped and skinned like a deer." *Id*. Plaintiff alleges that the notes and threats were turned over to the PREA Coordinators and EAI at HCF. Plaintiff alleges that because of these "validated threats,"

1

he was placed in Protective Custody or OSR (other security risk) in segregation at HCF, pending transfer for long term segregation at EDCF. *Id*.

Plaintiff was transferred to EDCF on August 24, 2023. *Id*. at 3. Plaintiff alleges that upon his arrival at EDCF, Plaintiff spoke with UTS Bucholz about these validated threats/PREA issues, and Plaintiff asked Bucholz to be careful about housing Plaintiff with people. *Id*. at 2, 3. UTS Bucholz placed Plaintiff with inmate Guerro-Martinez, an ex-Sureno, who was being targeted for dropping out of his gang. Plaintiff claims that on August 29, 2023—in anticipation of the September 6, 2023 release date for Guerro-Martinez—Plaintiff submitted an electronic Form-9 to the new UTS, because UTS Bucholz had switched to a different cell house. The Form-9 stated that Plaintiff had a "Greenlight" or target on him, and because his cellmate was being released, he asked "to please not house him with STG members due to the validated threat against him." *Id*. at 2, 4. Plaintiff alleges that the UTS failed to answer this in a timely manner, and placed Plaintiff with an active member of the Surenos, who attacked Plaintiff on September 13, 2023, beating him in the head over 30 times causing Plaintiff to suffer a concussion. *Id*. at 2, 3.

Plaintiff alleges that on September 9, 2023 (prior to the attack), he was moved to a crisis cell on suicide watch by Behavioral Health Professional ("BHP") Martin. *Id*. at 4. On September 11, 2023, Plaintiff spoke with BHP Shara Wark, and was removed from crisis status. *Id*. Wark asked Plaintiff if he had another inmate in mind that he could bunk with successfully. *Id*. Plaintiff replied "no" and said that he did not know anyone in B1 he felt safe living with due to the greenlight/validated threat. *Id*. at 4–5. Wark asked Plaintiff if he was okay living with inmate Rodriguez, and Plaintiff stated that "this isn't your job to make security moves, but if UTS said it was okay, and if Rodriguez was okay with it, he would." *Id*. at 5. Plaintiff did not know that Rodriguez was a member of the Surenos 13 (one of the STGs targeting Plaintiff), until

2

Rodriguez told him he was upon placement in the cell. *Id*. Upon placement in the cell and once restraints were removed, Rodriguez struck Plaintiff in the head over 30 times, until OC spray was deployed. *Id*.

Plaintiff alleges deliberate indifference and failure to protect him in violation of the Eighth Amendment. *Id*. at 3. Plaintiff names as defendants: John-Mark A. Henke, UTM at EDCF; and Shara Wark, BHP at EDCF. Plaintiff seeks $150,000 in compensatory damages and $5,000 in punitive damages. *Id*. at 9.

## II. The Report

The Report provides as follows:

### SECURITY THREAT GROUPS

KDOC enacts Internal Management Policy and Procedure (IMPP) to establish directives and guidelines for staff, residents, and those entities that are contractually bound to adhere to them. Select IMPPs are designated "Staff Read Only", indicating dissemination is restricted to KDOC staff and dissemination to others would be detrimental to the safety and security of KDOC operations. IMPP 12-105D, *Security Threat Groups Identification and Management*, has been designated "Staff Read Only". (Exhibit B – provisionally filed under seal) IMPP 12-105D addresses the validation process and management of Security Threat Group (STG) members to prevent disruption and maintain order at KDOC facilities. *Id.* IMPP 12-105D defines a "suspect" and a "confirmed resident/ offender". A "suspect" meets a minimum of one criteria but does not meet the ten point standard for confirmation. *Id.* A "confirmed resident/offender" is "[a] resident/offender who has been investigated and meets the criteria established for identification as a member of a Security Threat Group". *Id.*

Groshung is a "suspect" Neighborhood Crip due to his Neighborhood Crip related tattoos. (Exhibit C) Groshung does not meet any additional confirmation criteria as a member of any STG. *Id.* April 6, 2023, restrictive housing review notes document Groshung's statements that although he claimed prior involvement with the Neighborhood Crips, he was never involved in a gang. (Exhibit D) Groshung stated when he was "young and stupid" he tattooed "Crip" and other gang related language on his arms so he could look tougher. *Id.*

Neighborhood Crips' immediate rival would be Bloods, a rivalry ongoing for many years. (Exhibit C) Neighborhood Crips do not have a specific rivalry with Surenos, and Surenos do not have a specific rivalry with Bloods. *Id.* Surenos [sic] immediate rival would be Nortenos. *Id.*

### *GROSHONG'S CONDUCT WITH PEERS*

A July 31, 2023, Inter-Facility Transfer Request summarizes contributing factors of Groshung's interpersonal struggles with other residents. The Request states:

> This resident brings issues to himself with other residents and STG groups self admittedly. He has Mental Health diagnoses that are contributing factors to the problems he creates, however the majority of his problems he has created for himself. During his time at HCF he has created issues with STG AB's, Surenos, Neutrals and Crip population. (Exhibit G)

The Request further states "[i]t has been determined by the RH review board that this resident is simply afraid to be in prison and knows exactly what to say, who to say it to and has purposely created problems for himself in an effort to remain in RHU." *Id.*

### *HUGO RODRIGUEZ, #104764*

Hugo Rodriguez, #104764 began his most recent KDOC commitment on August 18, 2016, after Seward County convictions in cases 15CR337 and 15CR440. (Exhibit E) Rodriguez is a "validated" Sureno. (Exhibit C) Rodriguez has numerous tattoos, including "Sureno" across the left side of his forehead. (Exhibit E)

### *CELLMATE PAIRING*

New staff are taught criteria to evaluate when pairing residents as cellmates. Considerations include race, age, sexual victimization and abusiveness (SVA) screening results, STG affiliations, custody/segregation status, crime of commitment, height/weight, central monitors, mental health score and medical restrictions. (Exhibit F) A review of the cellmate pairing of Groshung and Rodriguez by Classification Administrator Kirbie Shearburn shows compliance with the pairing criteria listed above. *Id.* Their SVA scores are compatible, they are eight years apart in age, they are relatively similar in size, with Groshung being an inch taller and 40 pounds heavier. *Id.* Both are in Long Term Segregation, both have violent criminal history and disciplinary history, both were sentenced for violent person felonies, their mental health levels are identical and neither has a medical restriction. *Id.* It is also not

4

> uncommon for a Neighborhood Crip and a Sureno to be celled together, the groups are not considered rivals. *Id.*

(Doc. 18, at 2–4.)

## III. DISCUSSION

Plaintiff alleges that Defendants failed to protect him by placing him in a cell with a known gang member when Plaintiff had a greenlight target on him. "[P]rison officials have a duty to 'provide humane conditions of confinement,' including 'tak[ing] reasonable measures to guarantee the safety of . . . inmates.'" *Hooks v. Atoki*, 983 F.3d 1193, 1205 (10th Cir. Dec. 29, 2020) (quoting *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018) (alteration and omission in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). This duty includes "a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (ellipsis and quotation marks omitted).

A claim of deliberate indifference requires a plaintiff to allege "that an official acted (or failed to act) in an objectively unreasonable manner and with subjective awareness of the risk." *Strain v. Regalado*, 977 F.3d 984, 987 (10th Cir. 2020) (noting that "the word deliberate makes a subjective component inherent in the claim"). Plaintiff must "establish that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 990 (citations and alteration omitted).

"[A]n official's intent matters not only as to what the official did (or failed to do), but also why the official did it." *Id.* at 1204 (citing *Strain*, 977 F.3d at 993). The official's response to the risk is also a consideration. *See id.* at 1205 (citing *Farmer*, 511 U.S. at 844 (explaining that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted")).

"The unfortunate reality is that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Turner v. Okla. Cty. Bd. of Cty. Comm'rs*, 804 F. App'x 921, 926 (10th Cir. 2020) (unpublished) (citing *Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) (per curiam) (internal quotation marks omitted); *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (same)). "[S]ubjective awareness of only *some* risk of harm to a prisoner is insufficient for a deliberate-indifference claim." *Id*. (citing *Marbury*, 936 F.3d at 1238). Rather, "officials must possess enough details about a threat to enable them to conclude that it presents a strong likelihood of injury, not a mere possibility." *Id*. (citing *Marbury*, 936 at 1236 (internal quotation marks omitted)).

Plaintiff's August 29, 2023 Form 9 states as follows:

> On 09/06/23 my celly goes home. Do not throw me with someone I won't match with when he leaves. I am a Protective Custody inmate, and I have one of the biggest green lights in the state of Kansas. Do not house me with anyone whoes [sic] going to be a problem. If you throw someone random with me and I'm attacked, it is considered Deliberate Indifference. Thank you for your time.

(Doc. 1–1, at 5.)

The Report notes that Plaintiff was unaware of any risk associated with Rodriguez, as he stated in his Complaint that when asked about living with Rodriguez he said ". . . if Rodriguez was okay with it, he would." *See* Doc. 1, at 5; Doc. 18, at 6. The Report also states that it is unlikely that Plaintiff did not know that Rodriguez was a Sureno 13 considering that Rodriguez advertises the relationship with a "Sureno" tattoo across the left side of his forehead. (Doc. 18, at 6.) The Report provides that "if [Plaintiff] was unaware that Rodriguez was a threat, it is impossible he communicated detailed information about the threat to prison officials." *Id*. Instead, Plaintiff generally described having a "green light" and requested that he not be housed "with anyone

6

random" in his Form 9. *Id*. (citing Exhibit M).

Based on the Report, the Court is considering dismissal of Plaintiff's failure to protect claim. Plaintiff fails to show that officials possessed enough details about a threat to enable them to conclude that it presented a strong likelihood of injury, not a mere possibility. However, the Court will grant Plaintiff an opportunity to respond to the Report and to show good cause why his claims should not be dismissed for failure to state a claim.

## IV. Response Required

The *Martinez* report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). The report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)). Thus, at this point in the proceedings the Court does not use the Report to resolve conflicts of fact. *See Swoboda v. Duback*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the Martinez report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes."). In light of the Report, the Court is considering dismissal of this matter for failure to state a claim.

Plaintiff will be given an opportunity to respond to the Report and to show good cause why dismissal should not be entered. Failure to respond by the Court's deadline may result in dismissal of this action without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **November 8, 2024,** in which to respond to the Report at Doc. 18, and to show good cause, in

7

writing to the undersigned, why Plaintiff's claims should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated October 9, 2024, in Kansas City, Kansas.**

<u>S/  John W. Lungstrum</u>
**JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE**