IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**ROBERT ALAN GROSHONG,**

    **Plaintiff,**

    v.                                               CASE NO. 24-3021-JWL

**JOHN-MARK A. HENKE, et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF"). The Court granted Plaintiff leave to proceed in forma pauperis. On February 12, 2024, the Court entered a Memorandum and Order (Doc. 4) ("M&O") finding that the proper processing of Plaintiff's Eighth Amendment claim could not be achieved without additional information, and directing Kansas Department of Corrections ("KDOC") officials to submit a *Martinez* Report. After the *Martinez* Report (Doc. 18) (the "Report") was filed, the Court entered a Memorandum and Order (Doc. 22) ("M&O II") ordering Plaintiff to show good cause why his claims should not be dismissed for the reasons set forth in the M&O II. This matter is before the Court on Plaintiff's Response (Doc. 23).

Plaintiff's factual allegations and the findings from the Report are set forth in detail in the Court's M&O II. In summary, Plaintiff alleges deliberate indifference and failure to protect him in violation of the Eighth Amendment. Plaintiff alleges that Defendants failed to protect him by placing him in a cell with a known gang member (Rodriguez) when Plaintiff had a greenlight target on him.

"[P]rison officials have a duty to 'provide humane conditions of confinement,' including 'tak[ing] reasonable measures to guarantee the safety of . . . inmates.'" *Hooks v. Atoki*, 983 F.3d

1

1193, 1205 (10th Cir. Dec. 29, 2020) (quoting *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018) (alteration and omission in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). This duty includes "a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (ellipsis and quotation marks omitted).

A claim of deliberate indifference requires a plaintiff to allege "that an official acted (or failed to act) in an objectively unreasonable manner and with subjective awareness of the risk." *Strain v. Regalado*, 977 F.3d 984, 987 (10th Cir. 2020) (noting that "the word deliberate makes a subjective component inherent in the claim"). Plaintiff must "establish that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 990 (citations and alteration omitted).

"[A]n official's intent matters not only as to what the official did (or failed to do), but also why the official did it." *Hooks*, 983 F.3d at 1204 (citing *Strain*, 977 F.3d at 993). The official's response to the risk is also a consideration. *See id.* at 1205 (citing *Farmer*, 511 U.S. at 844 (explaining that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted")).

"The unfortunate reality is that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Turner v. Okla. Cty. Bd. of Cty. Comm'rs*, 804 F. App'x 921, 926 (10th Cir. 2020) (unpublished) (citing *Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) (per curiam) (internal quotation marks omitted); *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (same)). "[S]ubjective awareness of only *some* risk of harm to a prisoner is insufficient for a deliberate-indifference claim." *Id.* (citing *Marbury*,

936 F.3d at 1238). Rather, "officials must possess enough details about a threat to enable them to conclude that it presents a strong likelihood of injury, not a mere possibility." *Id*. (citing *Marbury*, 936 at 1236 (internal quotation marks omitted)).

The Report notes that Plaintiff was unaware of any risk associated with Rodriguez, as he stated in his Complaint that when asked about living with Rodriguez he said ". . . if Rodriguez was okay with it, he would." *See* Doc. 1, at 5; Doc. 18, at 6. The Report also states that it is unlikely that Plaintiff did not know that Rodriguez was a Sureno 13 considering that Rodriguez advertises the relationship with a "Sureno" tattoo across the left side of his forehead. (Doc. 18, at 6.) The Report provides that "if [Plaintiff] was unaware that Rodriguez was a threat, it is impossible he communicated detailed information about the threat to prison officials." *Id*. Instead, Plaintiff generally described having a "green light" and requested that he not be housed "with anyone random" in his Form 9. *Id*. (citing Exhibit M).[1]

The Court found in the M&O II that Plaintiff failed to show that officials possessed enough details about a threat to enable them to conclude that it presented a strong likelihood of injury, not a mere possibility. In his response, Plaintiff states that he "has/had no knowledge of any 'validations, or suspect list.'" (Doc. 23, at 2.) Plaintiff sets forth the details of his tattoos and states that "Plaintiff's tattoos are irrelevant to the situation at hand, but upon admittance to RDU Plaintiff's last name was spelled incorrectly, his time served/jail credit was miscalculated, and his

---

[1] Plaintiff's August 29, 2023 Form 9 states as follows:

> On 09/06/23 my celly goes home. Do not throw me with someone I won't match with when he leaves. I am a Protective Custody inmate, and I have one of the biggest green lights in the state of Kansas. Do not house me with anyone whoes [sic] going to be a problem. If you throw someone random with me and I'm attacked, it is considered Deliberate Indifference. Thank you for your time.

(Doc. 1–1, at 5.)

tattoo/scar inventory was done incorrectly." *Id*. (cleaned up).  Plaintiff states that the "KDOC has resolved only some of these issues." *Id*. at 3.

Plaintiff alleges that UTM Henke failed to review or read a report that stated that Plaintiff has problems with Surenos, ABs, etc. *Id*.  Plaintiff also alleges that Shara Wark told Plaintiff she was sorry and was only trying to help Henke do his job "because he is incompetent." *Id*.  Plaintiff alleges that he was not able to see Rodriguez until he was placed in the cell with Plaintiff.  *Id*. Plaintiff concludes his response by stating that "[u]nfortunately, KDOC is trying to explain away the fact that their staff was negligent is doing cell house moves, failed to review Plaintiff's file, and got the Plaintiff physically attacked." *Id*. at 4.

An Eighth Amendment failure to protect claim requires more than mere negligence. *See Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) (where plaintiff claimed staff failed to protect him by placing him in a cell with members of Latin Kings, court stated that "[t]he Supreme Court has explained that 'deliberate indifference entails something more than mere negligence . . .'") (citing *Farmer*, 511 U.S. at 835).  A plaintiff "must do more than establish that [a defendant] should have known of the risk of harm." *Id*. (citation omitted).  "The mere showing of simple, or even heightened, negligence does not establish that [defendants] were subjectively aware of the risk." *Id*. at 1176.

The Court finds that Plaintiff has failed to show good cause why his Complaint should not be dismissed for the reasons set forth in the Court's M&O II.  Plaintiff has failed to show that officials possessed enough details about a threat to enable them to conclude that it presented a strong likelihood of injury, not a mere possibility.  Plaintiff has also failed to allege that a defendant was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference.

**IT IS THEREFORE ORDERED BY THE COURT** that this matter is **dismissed** for failure to state a claim.

**IT IS SO ORDERED**.

**Dated October 17, 2024, in Kansas City, Kansas.**

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE
